BRYAN KING SHELDON (SBN 116219)
Bryan.Sheldon@LimNexus.com
JAMES E. TILL (SBN 200464)
James.Till@LimNexus.com
GEORGE BUSU (SBN 235993)
George.Busu@LimNexus.com
LIMNEXUS LLP
707 Wilshire Boulevard, 46th Floor
Los Angeles, CA  90017
Tel.:  (213) 955-9500; Fax:  (213) 955-9511

Attorneys for Plaintiff
PCB Debt, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re* Albert Y. Lee,<br><br>    Debtor. | Case No.: **1:18-bk-11869-MT**<br><br>Adversary No.:<br><br>**COMPLAINT TO REVOKE DISCHARGE UNDER 11 U.S.C. § 727** |
| PCB Debt, LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>  vs.<br><br>Albert Lee, aka Albert Y. Lee,<br><br>    Defendant. | |

LIMNEXUS LLP

For claims against defendant Albert Lee, plaintiff PCB Debt, LLC, a Nevada limited liability company, alleges as follows:

### JURISDICTION AND GENERAL ALLEGATIONS

1.    The Court has jurisdiction over the subject-matter of this proceeding based on 11 U.S.C. § 727(d) and (e), and 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

2.    Plaintiff, PCB Debt, LLC, a Nevada limited liability company ("Plaintiff"), is the assignee of creditor Pacific City Bank, a California corporation (the "Bank") in the above-referenced Chapter 7 Bankruptcy Case No.: 1:18-bk-11869-MT (the "Bankruptcy Case"), and has standing to bring this action under 11 U.S.C. § 727 (d), and (e).

3.    Albert Lee, aka Albert Y. Lee, ("Defendant") is the Debtor in the Bankruptcy Case and was represented by bankruptcy counsel therein.

4.    On or about July 25, 2018, Defendant signed and filed, under penalty of perjury, his Bankruptcy Schedules A-J, his Statement of Financial Affairs ("SOFA"), and related bankruptcy documents.  (Docket #1-4.)  By Defendant's signatures, Defendant declared under penalty of perjury that he had read the above-referenced documents, and that all information therein was true and correct.

5.    On September 28, 2018, Defendant personally appeared before David Keith Gottlieb, the duly appointed and acting Chapter 7 Trustee ("Trustee") in the Bankruptcy Case, at his 11 U.S.C. § 341(a) meeting of creditors ("Meeting of Creditors"), and testified under oath. Defendant testified under oath that he signed his bankruptcy petition, Schedules, SOFA, and related bankruptcy documents, and that they were accurate, true and complete.

6.    The Court entered an Order granting Defendant's Chapter 7 discharge on November 5, 2018.  (Docket #12.)  Accordingly, this complaint is timely filed, as provided under 11 U.S.C. § 727(e).

**COMPLAINT TO REVOKE DEFENDANT'S DISCHARGE UNDER 11 U.S.C. § 727**

**SPECIFIC FACTUAL ALLEGATIONS**

7.    Defendant's Schedule E/F identified the Bank as holding an unsecured claim in the amount of $706,542, described as "Judgment-Money-Business-Loan". The origins of this judgment debt are as follows: on or about December 21, 2010, the Bank filed an action against SH Supply, Inc., a California corporation ("SH Supply") and Albert Lee (Defendant herein) in Los Angeles Superior Court, titled *Pacific City Bank v. SH Supply, Inc., et al.*, and assigned case number BC451702 (the "Action"); in the Action, the Bank alleged claims for breach of contract and commercial guaranty, as well as other common counts for failure to repay a business loan; on or about September 27, 2011, a judgment after court trial was entered in the Action in favor of the Bank and against "SH SUPPLY, INC.; ALBERT LEE" in the total amount of $706,542.72 (the "Judgment Debt"). The Bank recently assigned the Judgment Debt to Plaintiff herein so that Plaintiff can bring this revocation action.[1] The Bank collected $5,000 toward the Judgment Debt before Debtor filed his bankruptcy petition. Other than that small collection, the Judgment Debt remains unsatisfied.

**A.    DEFENDANT CONCEALED INCOME FROM THE BANKTURPCY COURT**

8.    Defendant's Schedule I, signed under penalty of perjury, required Defendant to list all sources of income. Defendant declared that his monthly income was $1,520, earned entirely from working as an "Uber Driver". Defendant declared that he had no other sources of income. Defendant's representations regarding his income were knowingly and intentionally false when made.

9.    Defendant's Schedule I, at Part 2, line 8(c), required Defendant to list "Family support payments that you, or a non-filing spouse, or a dependent regularly receive" and explained that Defendant was required to "Include alimony, spousal support, child support, maintenance, divorce settlement and property settlement." Defendant declared $0 in response to this item.

---

[1] Although Defendant's Schedule E/F states that the Judgment Debt was incurred in 2007, it was in fact incurred in 2011.

**COMPLAINT TO REVOKE DEFENDANT'S DISCHARGE UNDER 11 U.S.C. § 727**

LimNexus LLP

1    10.    Defendant's SOFA, at Question 5, signed under penalty of perjury, asked whether

2  Defendant "receive[d] any other income during this year or the two previous calendar years".

3  Immediately below Question 5, "other income" is defined to specifically include "alimony; child

4  support".  Defendant responded to this question in the negative.

5    11.    The falsity of said representations came to light in 2019 in connection with a

6  probate proceeding opened after the death of Defendant's former spouse, Sun Mi Choi.

7    12.    Sun Mi Choi passed away in February 2019 and probate was opened in *The Estate*

8  *of Sun Mi Choi*, Los Angeles Superior Court case number 19STPB01790 ("Probate Proceeding").

9  On or about March 11, 2019, Albert Lee (Defendant herein) filed his "Second Supplement to *Ex*

10  *Parte* Application for an Order for Special Letters of Administration" ("Application") in the

11  Probate Proceeding.  (A true and correct copy of the Application is attached as Exhibit A hereto

12  and incorporated by reference.)  Defendant verified the Application under penalty of perjury.  (*Id.*

13  at p.17.)  The Application, requested, in part, a family allowance from the *Estate of Sun Mi Choi*

14  of $20,000 per month as follows:

15    Previously, Decedent [Sun Mi Choi] was providing an "unofficial"

16    child support payment of $20,000 per month to Petitioner [Albert

17    Lee] for the benefit of the children.  Petitioner requests that the court

18    authorize the Co-Special Administrators to continue to pay such

19    family allowance going forward, and to pay retroactively for the

20    month of February, which was not yet paid.

21  (*Id.* at p.18:23-28.)  Defendant also argued to the Probate Court that he did not commit bankruptcy

22  fraud by failing to disclose income to this Court in this Bankruptcy:  "Although Petitioner did file

23  for bankruptcy protection, there was no fraud committed as alleged by Park.  The money that

24  Petitioner received from Decedent after the divorce was for child support."  (*Id.* at p.9:16-19.)

25  //

26  //

27

28

LimNexus LLP

4
COMPLAINT TO REVOKE DEFENDANT'S DISCHARGE UNDER 11 U.S.C. § 727

**B.    DEFENDANT CONCEALED HIS CONNECTION TO AND CLAIMED INTEREST IN TWO VALUABLE CORPORATIONS**

13.    Defendant's SOFA, at Question 27, signed under penalty of perjury, asked whether "[w]ithin 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business? … An officer, director or managing executive of a corporation." Defendant responded to this question in the negative. This representation was knowingly and intentionally false when made. The falsity of said representation came to light in connection with the Probate Proceeding.

14.    In the Probate Proceeding, on or about March 7, 2019, Albert Lee (Defendant herein) filed his "Declaration of Albert Lee in Support of Petitioner's *Ex Parte* Application for an Order for Special Letters of Administration" ("Declaration"). (A true and correct copy of the Declaration is attached as Exhibit B hereto and incorporated by reference.) In the Declaration, Defendant declares:

> [¶5] I established Chas [Group, Inc.], in 2009, and Amberboa [,Inc.], in 2012, and served as the "President" along with decedent Sun Mi Choi, up until approximately 2017. I was in charge of running and managing the entire business operations at Chas and Amberboa since inception to about March 2017.
>
> [¶9]  Decedent and I were married in 2004 and were a couple up until about March 2017…
>
> [¶11]  [Decedent] and I lived together for approximately 13 years, but even after our "paper" divorce in 2014, which was only for the protection and separation of assets due to bankruptcy, Decedent and I continued to have good relations…
>
> [¶12]  Although I established and ran both businesses, I put all official business matters in my then-wife's name to protect Chas and Amberboa from difficult financial time I had with a loan repayment

**COMPLAINT TO REVOKE DEFENDANT'S DISCHARGE UNDER 11 U.S.C. § 727**

LimNexus LLP

1    associated with my predecessor business, SH Supply [,Inc.], which I

2    established in 2002.

3    [¶13]   Because of my financial concerns that I might be facing

4    bankruptcy proceeding in the future with SH Supply, I wanted to

5    protect Chas and Amberboa.   Due to the financial troubles of SH

6    Supply, I created Chas and Amberboa purposely using only

7    Decedent's name to protect them from any potential demise of SH

8    Supply.

9    [¶14]  The Decedent and I built up Chas and Amberboa to be multi-

10   million dollar companies over the years.  By March 2017, Chas and

11   Amberboa were established in the apparel industry, and were

12   running smoothly.

13    [¶16]  I completely trusted Decedent, and had no concern that my

14   businesses were in Decedent's name because we had 3 children

15   together, and I believed that ultimately everything would go to them

16   and be for their benefit.

17   (Exhibit B, Declaration, at ¶¶ 5, 9, 11-14, 16.)  The foregoing contradicts Defendant's

18   representation to this Court that he did not serve as an "officer, director or managing executive of

19   a corporation" within four years before filing for the Bankruptcy Case.  The Declaration also

20   contradicts Defendant's representation to the Bankruptcy Court that he did not "own a business"

21   within four years before filing the bankruptcy petition.  (*Id.*)  At paragraph 16, Defendant

22   specifically refers to Chas and Amberboa as "my businesses", and declares that he was not the

23   owner of record merely because he was anticipating the filing of a personal bankruptcy in

24   connection with "SH Supply".

25        15.     By his Declaration filed in the Probate Proceeding, signed under penalty of perjury,

26   Defendant admitted that he committed bankruptcy fraud in this Bankruptcy Case in order to deny

27

28

LimNexus LLP

COMPLAINT TO REVOKE DEFENDANT'S DISCHARGE UNDER 11 U.S.C. § 727

LMNEXUS LLP

1    the Bank its right to collect on the Judgment Debt (of $706,542.72) against Defendant and his

2    company, SH Supply.

**FIRST CLAIM FOR RELIEF TO REVOKE DISCHARGE**

**Revocation of Discharge - 11 U.S.C. § 727(d)(1)**

**Defendant's False Oaths in the Bankruptcy Documents**

6    16.    Plaintiff re-alleges paragraphs 1 through 15, above.

7    17.    Defendant's discharge should be revoked pursuant to 11 U.S.C. §§ 727(d)(1)

8    because Defendant obtained his Chapter 7 discharge through fraud by knowingly and fraudulently

9    making materially false statements in his bankruptcy documents.

10    18.    The Bank did not know of, or have reason to know of, Defendant's bankruptcy

11    fraud until after Defendant's discharge was granted.  Plaintiff herein did not know of Defendant's

12    bankruptcy fraud until after Defendant's discharge was granted.

**SECOND CLAIM FOR RELIEF TO REVOKE DISCHARGE**

**Revocation of Discharge - 11 U.S.C. § 727(d)(1)**

**Defendant's False Oaths at the Meeting of Creditors**

16    19.    Plaintiff re-alleges paragraphs 1 through 18, above.

17    20.    Defendant's discharge should be revoked pursuant to 11 U.S.C. §§ 727(d)(1)

18    because Defendant obtained his Chapter 7 discharge through fraud by knowingly and fraudulently

19    making materially false statements under oath at his Meeting of Creditors in at least one or more

20    of the following respects:

21       a)  By testifying that his bankruptcy documents were true and correct.

22       b) By testifying that all of his assets were disclosed in his schedules.

23    21.    The Bank did not know of, or have reason to know of, Defendant's bankruptcy

24    fraud until after Defendant's discharge was granted.  Plaintiff herein did not know of Defendant's

25    bankruptcy fraud until after Defendant's discharge was granted.

**COMPLAINT TO REVOKE DEFENDANT'S DISCHARGE UNDER 11 U.S.C. § 727**

**THIRD CLAIM FOR RELIEF TO REVOKE DISCHARGE**

**Revocation of Discharge - 11 U.S.C. § 727(d)(2)**

**Concealment of Property of the Bankruptcy Estate**

22.　　Plaintiff re-alleges paragraphs 1 through 21, above.

23.　　Defendant's discharge should be revoked pursuant to 11 U.S.C. §§ 727(d)(2) because, by concealing that he was receiving $20,000 per month from Sun Mi Choi after the "paper divorce", Defendant acquired property of the bankruptcy estate and knowingly and fraudulently failed to report the acquisition of such property to the trustee.

24.　　The Bank did not know of, or have reason to know of, Defendant's bankruptcy fraud until after Defendant's discharge was granted. Plaintiff herein did not know of Defendant's bankruptcy fraud until after Defendant's discharge was granted.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

1.　　That Defendant's discharge be revoked.

2.　　That Plaintiff be awarded costs as allowed by the Court.

3.　　For such other and further relief as the Court deems just and proper.

Dated: November 5, 2019　　　　　　**LIMNEXUS LLP**

By _____

Bryan King Sheldon
James E. Till
George Busu
Attorneys for Plaintiff PCB Debt, LLC

LIMNEXUS LLP

8

**COMPLAINT TO REVOKE DEFENDANT'S DISCHARGE UNDER 11 U.S.C. § 727**

# Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles 3/11/2019 1:07 PM Sherri R. Carter, Executive Officer/Clerk, By H. Suh, Deputy Clerk

Deborah C. Keesey, SB #168815
BURKLEY BRANDLIN SWATIK & KEESEY, LLP
21515 Hawthorne Blvd., Suite 820
Torrance, CA 90503-6503
Telephone: (310) 540-6000
Facsimile: (310) 540-5976
E-mail: deb@keeseylaw.com

Henry H. Oh, SB #187127
John D. Spurling, SB #252324
Benjamin I. Leventhal Hicks, SB #312765
SHUMENER ODSON OH, LLP
550 South Hope St., Suite 1050
Los Angeles, CA 90071
Telephone: (213) 344-4203
Facsimile" (213) 344-4193
E-mail: Hoh@soollp.com

Attorneys for Petitioner
Albert Lee

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| The Estate of | ) Case No. 19STPB01790 |
|---|---|
| | ) |
| | ) **SECOND SUPPLEMENT TO EX PARTE** |
| | ) **APPLICATION FOR AN ORDER FOR** |
| | ) **SPECIAL LETTERS OF ADMINISTRATION;** |
| **SUN MI CHOI,** | ) **DECLARATION OF DEBORAH KEESEY;** |
| | ) **EXHIBIT A – L** |
| | ) |
| | ) Date: March 12, 2019 |
| | ) Time: 8:30 a.m. |
| Decedent. | ) Dept: 29 |
| | ) Cal#: 1023 |

SUPPLEMENT TWO TO EX PARTE APPLICATION FOR SPECIAL LETTERS

1

Petitioner Albert Lee ("Lee") hereby submits his Second
Supplement to his Ex Parte Application For An Order for
Special Letters of Administration, to clear probate notes and
as follows:

### INTRODUCTION

By his Ex Parte Application to "Deem" Brian Park an
Authorized Signatory of All Bank Accounts of Chas Group and
Amberboa, Brian Park seeks to seize 50% of Decedent's assets
belonging to Decedent's minor children through attempted
bigamy.

Brian Park claims that he is entitled to 50% of
Decedent's estate because "Decedent and Park were engaged to
be married and planned to have a formal wedding ceremony in
Spring 2019.  Decent and Park lived together in a family home
they purchased together.  Title to the family home is held as
'Brian Hoysung Park and Sunmi Choi, husband and wife, as
Community Property.'"  Brian Park fails to disclose to the
Court that as of the present time, let alone at the time
Decedent and Park were purportedly engaged to be married, he
was still married to Christina Mikyung Park.  Indeed, although
Brian Park and Christina Mikyung Park filed for divorce in
2010, the divorce proceeding remains pending and "open."  See
LASC Docket attached hereto as **Exhibit J.**

The Court should appoint Albert Lee as a Special
Administrator because (a) Decedent's assets belong to her
minor children, Albert Lee is the father and legal guardian of
Decedent's children, and consequently there is no special
administrator who is more qualified to represent the best
interests of Decedent's children than Albert Lee, (b) evidence

is undisputed that Albert Lee is the founder and former
operator of Decedent's businesses, Chas Group, Inc., and
Amberboa, Inc., before they were turned over to Decedent, and
is therefore intimately familiar with the operation of the
businesses, and (c) in light of Brian Park's offensive
disparagement of Albert Lee for merely exercising his legal
right to bankruptcy, Albert Lee is willing to be supervised by
Professional Fiduciaries who will also serve as Co-Special
Administrators.  In the alternative, if the Court still has
any concern about the qualification of Albert Lee, he
nominates Decedent's sister, Sun Hwa Choi, to serve as the
Special Administrator, along with Professional Fiduciaries as
Co-Special Administrators.

    The one thing that the Court should not allow is to
permit Brian Park to become a signatory of all of the bank
accounts Chas Group and Amberboa or otherwise manage their
business.  Brian Park and his wife, Christina Park, own Ashley
U.S.A., Inc., a wholesale clothing business which is a direct
competitor of Chas Group and Amberboa.  See Secretary of State
filing attached hereto as **Exhibit K.**  Allowing Brian Park to
become a signatory of all of the bank accounts Chas Group and
Amberboa or otherwise manage their business risks potential
misappropriation of trade secrets (such as vendor and customer
lists) of Chas Group and Amberboa.  Moreover, Brian Park's ex
parte application for order "deeming" him as an authorized
signatory to all bank accounts of Chas and Amberboa amounts to
an adjudication of the ownership rights of Decedent's Estate
versus Brian Park on an ex parte basis.  Should this matter be
continued for a hearing, the Court should preserve the status

quo and allow Ricky Oh, the current general manager, to
continue to handle accounting matters pending a full briefing
and hearing of these contested matters.

   1.   **Purpose of March 12, 2019, Hearing is to Appoint a
Special Administrator; It is Not to Argue the Merits of Park's
Claim for Ownership.**   Before the court on March 12, 2019, is
the issue of who is best suited, qualified, and appropriate to
serve as Special Administrator for the preservation of the
estate.   Probate Code Section 8540.   Under PC Section 8541(b):
"In making the appointment, the court shall ordinarily give
preference to the person entitled to appointment as personal
representative."   In the instant case, Lee has priority as the
representative of the only successors in interest, Lee's and
Decedent's 3 minor children.   There are no adverse interests
between Lee and his children, and Lee will disclaim any rights
he may have in the estate and businesses.

   The purpose of the March 12, 2019, hearing is not to
argue the merits of Park's claim of 50% ownership of the
companies which can be made during the regular administration
of the estate.   The goal of the Special Administration is to
ensure that the estate and the beneficiaries are protected by
keeping the businesses running.   Even Park concedes that the
ownership question is a triable issue requiring an evidentiary
hearing.   *See* Respondent Brian H. Park's Supplement to His
Objections, etc. ("Resp. Supp"), at Para. 4, p. 4.

   Because Park has failed to produce any meritorious
evidence to show that he is a 50% owner of the business, a
receiver is not appropriate.

   The businesses are continuing to run like well-oiled

machines since the death of decedent operated by the general, show room, production and warehouse, managers. The only open issue is who to appoint as Special Administrator, who will appoint the Officers and Directors to fulfill the function of issuing checks to pay vendors and other expenses.

2. **Petitioner Nominates Professional Fiduciaries to Serve as Co-Special Administrator.** To demonstrate Petitioner's desire for good faith and fair dealing towards the operation and preservation of the businesses, Chas Group, Inc., and Amberboa, Inc., Lee hereby nominates two neutral, skilled, Professional Fiduciaries, Jodi Pais Montgomery and David Berrent, to serve with him as the Co-Special Administrators.

3. **Independent, Objective, Experienced Fiduciaries.** Ms. Pais Montgomery and Mr. Berrent have vast experience in administering estates, and handle millions in assets. Ms. Pais Montgomery and Mr. Berrent work as a team of California-licensed professional fiduciaries who offer a broad and diverse range of professional experience in businesses and provide expert, reliable, and prudent case management. Ms. Pais Montgomery and Mr. Berrent are bonded, and Bond Services and the surety have pre-approved them with Petitioner for a bond of $36,000,000. Ms. Pais Montgomery's and Mr. Berrent's consent and curricula vitae are attached hereto as **Exhibit A.**

4. **Appointing Fiduciaries Satisfies Request of Opposing Party.** Respondent Brian Park ("Park") has also requested that a professional fiduciary serve as the Special Administrator whose "judgment will not be compromised" by emotions. *See* Resp. Supp, p. 4, line 1. The professional fiduciaries

nominated herein are neutral parties and do not have any pre-existing relationships or knowledge of the parties or of this case.  In appointing Petitioner and the professional fiduciaries, all parties and the court are given security that the assets of the estate and the beneficiaries will be well protected.

The professional fiduciaries are held to a higher standard to protect the estate from waste, squandering, and wrongful and malevolent activities, and are licensed and certified to do so by the state of California.  Acting with the Petitioner's personal and unique trade craft and wisdom of the garment industry, the professional fiduciaries and Petitioner, together, will ensure that the businesses that Petitioner started and grew over the last decade, will continue to be profitable and will continue their upward trend.

Petitioner, along with the two fiduciaries, are the most suitable and appropriate persons to have Special Letters, as Petitioner is also the legal guardian of the successors in interest, has worked in the industry for over 26 years, and grew the companies into multi-million dollar businesses from the ground up.

5.   **The Law Requires the Appointment of Petitioner and the Professional Fiduciaries Over the Appointment of a Receiver.**  In A.G. Col. Co. v. Superior Court of County of Santa Clara, 196 Cal. 604, the Supreme Court held that a ***receiver should not be appointed where a remedy less drastic is available.***  In the instant matter, the appointment of Petitioner and the professional fiduciaries affords the court

a remedy far less drastic in nature and scope, and such remedy will insure the litigants adequate protection, over the appointment of a receiver.

Likewise, in *Dabney Oil Co. v. Providence Oil Co.*, 22 Cal. App. 233, 239 [133 Pac. 1155, 1158], the court found that the **appointment of a receiver should only occur as a last result**. Thus, if there are simpler means to achieve the desired result, they must take precedence over the appointment of a receiver. In the instant matter, the court must find that appointing Petitioner and the professional fiduciaries is the less stringent alternative to the appointment of a receiver, while still achieving the desired result: protection of the rights of all parties.

In contrast to a Receiver, who will necessarily have a more pejorative role and effect on the company and the accounts payable, and who would step in directly as the Officer/Director of the company, the Special Administrator would step into the shoes of the Decedent and elect the Directors, who elect the Officers, who would then manage the accounts payable, etc.

The fact is that a Special Administrator needs to be appointed now, and there are no better, more suitable persons than the Petitioner and the two Professional Fiduciaries.

6. **Guardian Ad Litem is Unnecessary.** The only claim Park musters for his request for a Guardian Ad Litem ("GAL") is that Petitioner and his attorney will seek compensation from the estate if they are appointed. This argument is nonsensical. Any appointed administrator of the estate and his attorney will seek compensation based on the statutory

rules for fees. The California Probate Code Section 10810, et seq., provides the mandated statutory scheme for compensation to the personal representative and the attorney.

Further, Park argues that only a professional fiduciary can be trusted and will ensure greater distributions to the children. Park will get what he requests as Petitioner has nominated not one, but two, professional fiduciaries to serve alongside him.

Finally, Park tenuously argues that the allegations against Park of a suspicious death and child molestation will subject the children to a financially poor father because of anticipated civil litigation costs. But, Petitioner will leave it to the police and the district attorney to pursue the criminal charges against Park. How can Park surmise what Petitioner will ultimately do with such charges when even Petitioner does not know what he will do?

There has been absolutely no evidence or allegation that Petitioner has anything but the beneficiaries' best interests at heart, just as Decedent did. Every family member of the Decedent supports the appointment of Petitioner, and the professional fiduciaries as Special Administrator. *See* **Exhibit H**. There is not one family member who believes that Park has good intentions towards the beneficiaries, or had good intentions towards the Decedent. Indeed, research shows that Park is still married to Christina Park. *See* **Exhibit J**.

In addition, if there are professional fiduciaries appointed as co-special administrators, the estate and beneficiaries will be protected, and a GAL would be redundant. Still, again, it is Petitioner's 100% goal to preserve the

estate assets for his children.

    7.   **Petitioner Is Qualified to Act as the Special Administrator.**  Park also grasps at arguments that Petitioner should be denied appointment because he filed for bankruptcy in 1992 and 2018.  However, according to the U.S. Small Business Administration, most small businesses fail, and this happened to Petitioner in his early years.  Notwithstanding, Petitioner should be commended with the fact that he was able to build two new businesses thereafter, Chas and Amberboa, and made them irrefutably successful.  It could be further said that Petitioner would be in the best position to run the current businesses because he has more experience having gone through hard times, and has knowledge of which mistakes to avoid.  Moreover, there will be two professional fiduciaries working to ensure the protection and preservation of assets of the estate.

    Although Petitioner did file for bankruptcy protection, there was no fraud committed as alleged by Park.  The money that Petitioner received from Decedent after the divorce was for child support.  Park does not specify the Petitioner's act that he claims is bankruptcy fraud except to say that Petitioner resided in a home in Porter Ranch and was an Uber driver.  *See* Resp. Supp., page3, lines 11-13.

    Park argues that Petitioner should not be appointed as Special Administrator based on Probate Code Section 8502, which provides that a personal representative may be removed for the following reasons:  waste, embezzling, mismanaging, committing fraud on the estate, inability to properly execute the duties of the office, wrongful neglect of the estate, for

protection of the estate, or other causes provided by statute.
But there is no evidence of waste, embezzlement,
mismanagement, fraud, neglect, etc.  Filing for bankruptcy is
a legal course of action which many corporations take, and
probably all of the major airlines have done so at one time or
another. Bankruptcy is not an inherently bad or illegal act,
but polygamy certainly is.  Additionally, there are
explanations for the bankruptcy, and the bankruptcy was
discharged as of November 5, 2018. *See* **Exhibit L.**

The unfortunate Chapter 7 filing in 2018, was the sad
result of the home wrecking caused by Park. The 2018
bankruptcy stemmed from Petitioner's initial business, SH
Supply, beginning in 2004 or 2005 when he took a personal loan
for his business in the amount of $700,000. Over $170,000 of
the debt was due to other business debt Petitioner took on
personally.

Although Petitioner and Decedent shielded the new
businesses from the SH Supply by putting everything in
Decedent's name only, and in an overabundance of caution
terminated their community property rights by divorcing, they
continued to love each other and were committed to each other
and their family, at least until Park came along.  When
Petitioner learned of the affair between Park and the Decedent
in 2017, Petitioner felt distraught, ashamed and dispirited,
and decided to take a leave of absence from the business and
just concentrate on his beloved children. Because of the
absence, Petitioner did not have an income, and tried to hold
on to the last bit of dignity he had after Park's home
wrecking.  But, he had a debt that he would be unable to

continue to pay down and had no option but to file for
bankruptcy in 2018.  If not for Park's interloping, Petitioner
would not have left work and would have been able to pay off
his loans and judgments which were personally taken for his
businesses.  See Declaration Supplement One of Albert Lee,
attached hereto as **Exhibit C.**

The 1992 bankruptcy, was fairly insignificant and
involved roughly $7,000.00 in credit card debt that he was
unable to pay at the time due to the L.A. Riots.  The riots
caused Petitioner's then employer to collapse, and Petitioner
lost his job and could not pay the credit card debt.  *See*
Declaration Supplement One of Albert Lee.

Again, filing for bankruptcy is not an evil act:  it is a
remedy which is legally available to companies and individuals
to give them a "fresh start."

None of these circumstances of Mr. Lee's bankruptcy
filings were those of his own making nor did they arise out of
any lingering mismanagement or lack of business judgement as
Park  alludes. In any case, because there will be two
professional fiduciaries serving with Petitioner, and all
individuals will be bonded, the risk factors are minimized.

8.    **Shares Were Given to Decedent But Not to Park.**

Although the March 12, 2019 hearing is not for the
purpose of arguing the merits of Park's claim for ownership,
Petitioner will briefly address Park's arguments as they were
filed prior to this hearing.  There is evidence of share
ownership of Decedent as shown in the K-1s reflecting Decedent
as 100% owner, and the Chas September 2, 2009 Minutes reflect
that Sun Mi Choi was the one and only Director, all the

Officers of the corporation, and the shareholder of Chas
Group. See **Exhibit B.**

9.   **Estimated Tax Payments Paid for Park Do Not Prove
Ownership.**  Park has claimed that the one piece of evidence he
has of ownership of the companies lies in the payment by Chas
of Park's estimated taxes in January of 2019.  However, the
fact that the estimated taxes were discussed by two biased and
dubious individuals, Ester Jeong and Joan Kim, already places
doubt on the authenticity of such a thing.  But, assuming
*arguendo* that there was a contemplated payment of estimated
taxes for Park only would show that Decedent agreed to share
2019 profits/earnings with Park, which is different from
transferring ownership.  **Sharing of profits in no way
constitutes a transfer of ownership of company stock.**
Additionally, estimated tax payments in January 2019 would be
for 2019 earnings.

Transfers of company stock require certain formalities
for a good reason: the law does not allow just anyone to walk
in and claim ownership of a company without any genuine proof.
There are multiple witnesses who witnessed Decedent's stating
that she had no intention of ever giving any ownership of the
companies to Park. *See* Declaration of Dai Jeong Choi, para.
8., attached hereto as **Exhibit D.**

Decedent could have signed legal documents to properly
show that she meant to transfer partial ownership to Decedent,
but she did not, and it was purposeful.  That she did not has
caused a flurry of activity by Park, which includes filing
Statements of Information 3 days after Decedent's death,
running to the bank to not only request access to bank

accounts but falsely stating that the only true signatory, Ricky Oh, had quit, and pleading with company people to side with him.

Indeed, Park tried to persuade Sun Hwa Choi to join his team after Sun Mi's death.  Park also tried to gain Ricky Oh's allegiance by asking Ricky Oh to pledge his love and loyalty to Park or be deemed an enemy.  *See* Amended Declaration of Ricky Oh, attached hereto as **Exhibit E**.  When Ricky Oh did not do this, Park told bank officials that Ricky Oh had resigned, and has thrashed Ricky Oh's character since then.

10.  **Park's Claimed Past and Future Contributions in Exchange for Stock is Invalid To Prove Ownership.**

a.  **No Evidence of Capital Contributions.**  Park's counsel, Lisa Yang on March 6, 2018, with Lynda Chung participating, represented that Park obtained a 50% Ownership in exchange for his "prior" and "future" contributions.  But there is no record of any such contributions probably because none exist.

b.  **No Future Services May Constitute Payment For Shares of Corporation**.  The California Corporate Code §409 provides that neither uncollateralized promissory notes nor promises for future services may constitute payment for corporate stock.

11.  **Decedent Wanted or Did Break with Park; Park Was Not Decedent's Fiancé.**  Decedent told her sister, Sun Hwa Choi, that Park had often badgered her to give him ownership in her companies, but she had never wanted to do so.  See Declaration of Sun Hwa Choi, paragraph 4, attached hereto as **Exhibit F;** Declaration of Nam Hee Kim, para. 2-5, attached hereto as

**Exhibit G**; Declaration of Dai Jeong Choi, para. 8, **Exhibit D**;
Declaration of In Kyoung Choi, at Para. 4, **Exhibit H.**
Decedent hated Park in the end and distrusted him.  *Id.*, para.
4-6, 9; Declaration of In Kyoung Choi, at para. 6.  Decedent
was disturbed by the fact that Park's only interest appeared
to be taking over the company which she had worked so hard for
so long. *Id.* In the last year, realizing Park's true
character, Decedent regretted her decision to leave her
children for Park and wanted to turn everything back to the
way it was before Park insinuated himself into her life and
destroyed her family.  *Id.*

Research shows that Park is currently married which calls
into question his claim that he and Decedent were going to be
married in April 2019.  *See* **Exhibit J.**

Decedent and Park were never engaged. *Id.*, at 15;
Declaration of Dai Jeong Choi, para. 5; Declaration of In
Kyoung Oh, at para. 5.  Decedent had no plans to marry or to
ever have another baby, particularly with Park.  *Id.* **Sun Mi**
**hated Park in the end and was ready to get rid of him in the**
**business and in her personal life.** *Declaration of Dai Jeong*
*Choi*, at 16. *If* Decedent ever said she would give Park part of
her company, she either said it to make Park stop harassing
her, or changed her mind about doing so.  *Declaration of Dai*
*Jeong Choi*, at 5; Dec. In Kyoung Oh, at para. 4.

12.  **Park Is Disingenuous & Not Credible; Park's**
**Allegations Must Not Be Given Any Weight.** Just before her
death, Decedent attended a trade show in Las Vegas. *See* Dec.
Sun Hwa Choi, para. 7, **Exhibit F**.  Decedent was incredibly
angry about the troubles of the company where Park had tried

to force his way into controlling the businesses by bringing in certain employees to do his bidding, which was to gain control of Chas and Amberboa and funnel assets to his company, Mittoshop (Ashley U.S.A., Inc.), where Park is CFO and his wife is CEO. *Id.*, para. 7-8.

Irene Kim, who Park brought in as a production manager, frequently mismanaged the production and screwed up orders, **deliberately diverted certain product samples intended for Chas to Mittoshop, under the directions of Park.** *Id.* As a result, Mittoshop was able to start the production from that product sample to the detriment of Chas and Amberboa. *Id.*, para. 7. In fact, **Decedent caught Park trying to send a list of Chas' biggest clients to Mittoshop, also to the detriment of Chas and Amberboa.** *Id.*, para. 8. Decedent did not trust Park and she did not want Park to run her companies. *Id.*, para. 9-10.

a.    **Allegations of Park's Molestation of Decedent's Child.** To every parent's worst fears, there is evidence that Park molested Decedent and Petitioner's youngest son. *See* Declaration Supplement One of Albert Lee, para. 5, **Exhibit C.** It is quite misplaced that Park would request a GAL when it is he from whom the children require protection.

b.    **Ester Jeon and Joan Kim Are Not Credible & Their Testimony Must Be Dismissed.**

Park bases his tenuous claims of ownership on the declarations of Ester Jeon and Joan Kim, and Statements of Information. But, Ester Jeon and Joan Kim cannot be believed as they are still at the company only due to their alignment with Park. Decedent was about to clean house at the companies

by firing Ester Jeon, Joan Kim, Irene Kim and, possibly, Park. *See* Dec. of Sun Hwa Choi, para. 11, **Exhibit F. Decedent had targeted the company's accountants, Ester Jeon and Joan Kim, as particularly nefarious saying that they were part of Park's network of minions trying to help Park take over her business.** *Id.*

The authenticity of the Statements of Information filed for Chas and Amberboa by Joan Kim are also in question, and are the subject of Petitioner's handwriting expert's analysis. At the end of 2018, Decedent was going to fire Joan Kim and rehire the prior accountant. *Id.*, at 12. Decedent even had a box of fruit delivered to the prior accountant to ask her to return to Chas and Amberboa to replace Joan Kim at the end of 2018. *Id.* It is clear that Joan Kim is still in her position because she has aligned herself with Park, and because Decedent is no longer in the picture. *Id.* Joan Kim has every reason to fabricate her statements that would favor Park.

Further, Ester Jeon has an inherent conflict of interest and her testimony must be discredited as she is biased and is employed as Park's personal tax preparer. *Id.*, at 13.

14. **Police Investigation Into Suspicious Death.** Because Park lied to the police that Decedent suffered from depression, they did not initially open an investigation. *See* Dec. of Sun Hwa Choi, para. 17, **Exhibit F**. However, the police may open the investigation shortly.

Park was relentless in attempts to woo Decedent into giving him half her company, but she resisted. *Id.*, at 18. When Park realized that their relationship was souring, Park began funneling business opportunities and customers to his

business Mittoshop for the benefit of his own children. **The sequence of events is interesting in that when Park got wind that he was about to get kicked out of the business and out of Decedent's life, Decedent is found dead soon thereafter.**

15. <u>Probate Note A. No notice of hearing (Sun Hwa Choi) filed.</u>  Sun Hwa Choi has waived notice of hearing.  The waiver is attached hereto as **Exhibit I.**

16. <u>Probate Note B. What is annual gross income from real property? Personal property? Encumbrances on real property? Paragraph 3.d.(2)(a), (b) and 3.d.(5) incomplete - supp reqd.</u>  The annual gross income from real property is still under investigation.  The annual income from personal property (the businesses) is about $29,000,000.00.  There are no known encumbrances on any of the real properties.

17. <u>Probate Note C. Was decd survived by issue of a predecd child? Paragraph 5.a.(7), (8) incomplete - supp reqd.</u>  Decedent was not survived by a predeceased child.

18. <u>Probate Note D. Ages and dates of birth of each Harrison, Chelsea and Clayton to be included in supplement.</u>  Harrison Lee is 13 years old, and his birthdate is September 24, 2005.  Chelsea Lee is 11 years old, and her birthdate is June 8, 2007.  Clayton Lee is 8 years old, and his birthdate is June 2, 2010.

19. <u>Probate Note E. Is decd survived by parents as alleged by objr? If yes, names, addresses to be set forth in supplement and notice of hearing to be given.</u>  Decedent's parents are Sung Hwan Choi and Soon Ja Choi, who have waived notice of hearing.  The waivers are attached hereto as **Exhibit I.**  The addresses are as follows:

1  Sung Hwan Choi
   Jeon Ra Nam Do, Muan Kun,
2  Haejae Myun, Yim-Soori 204-2
   Korea

3  Soon Ja Kim
   Jeon Ra Nam Do
4  Muan Kun
5  Haejae Myun
   Yim-Soori 204-2
6  Korea

7  There are also two adult brothers of the decedent whose names
8  and addresses are as follows:

9  Keun Seo Choi
   2F-D, Tai Ning Da Jie
10 Hai Hua Gong Ye Building
11 Guangzhou, 510260
   China
12
13 Keun Won Choi
   Jeon Ra Nam Do
14 Muan Kun
   Haejae Myun
15 Yim-Soori 204-2
   Korea
16
17     Park has failed to serve these individuals with his
18 pleadings and notice of hearing.

19     20.  **Request for Family Allowance.** California Probate
20 Code Section 5640 provides that the minor children of the
21 decedent are entitled to such reasonable family allowance out
22 of the estate as is necessary for their maintenance.
23 Previously, Decedent was providing an "unofficial" child
24 support payment of $20,000.00 per month to Petitioner for the
25 benefit of the children.  Petitioner requests that the court
26 authorize the Co-Special Administrators to continue to pay
27 such family allowance going forward, and to pay retroactively
28 for the month of February, which was not yet paid.

WHEREFORE, Petitioner PRAYS for an ORDER:

1.   Appointing Albert Lee, Jodi Pais Montgomery, and David Berrent Co-Special Administrators;

2.   Setting the bond at $36,000,000.00;

3.   Setting a deadline for the filing of a status report, and setting an OSC hearing; and

4.   Authorizing a family allowance for the Decedent's children in the amount of $20,000.00/month to be paid by Chas, Inc., and to be retroactive to February 2019.

5.   For such other orders as the court deems just and proper.

DATED: March 11, 2019

> Respectfully submitted,
>
> BURKLEY BRANDLIN SWATIK & KEESEY, LLP
>
> By:  _Deborah C. Keesey_
> Deborah C. Keesey
> Attorneys for Petitioner
> Albert Lee

## DECLARATION OF DEBORAH C. KEESEY

I, Deborah C. Keesey, hereby declare that I am one of the attorneys of record for the Petitioner herein; that I have personal knowledge of the matters stated herein; and that, if called as a witness, I could and would testify competently to such matters:

1.   A true and correct copy of the Consent to Act as Co-Special Administrators, and the curricula vitae are attached hereto as **Exhibit A**.

2.   A true and correct copy of the Chas Bylaws produced by Respondent's counsel is attached hereto as **Exhibit B**.

3.   A true and correct copy of the Declaration Supplement One of Albert Lee is attached hereto as **Exhibit C**.

4.   A true and correct copy of the Declaration of Dai Jeong Choi is attached hereto as **Exhibit D**.

5.   A true and correct copy of the Amended Declaration of Ricky Oh is attached hereto as **Exhibit E**.

6.   A true and correct copy of the Declaration of Sun Hwa Choi is attached hereto as **Exhibit F**.

7.   A true and correct copy of the Declaration of Nam He Kim is attached hereto as **Exhibit G**.

8.   A true and correct copy of the Declaration of In Kyoung Oh is attached hereto as **Exhibit H**.

9.   A true and correct copies of the Waivers of Notice of Hearing and Nominations of Albert Lee, Jodi Pais Montgomery and David Berrent by Soon Ja Choi, Sun Hwa Choi, Sung Hwan Choi, Keun Seo Choi, Soon Ja Kim and Keun Won Choi are attached hereto as **Exhibit I**.

10.   A true and correct copy of the LASC Case #BD524473 summary is attached hereto as **Exhibit J**.

11.   A true and correct copies of the Secretary of State filings are attached hereto as **Exhibit K**.

12.   A true and correct copy of the Order of Discharge – Chapter 7, dated November 5, 2018, is attached hereto as **Exhibit L.**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 11th day of March, 2019, at Torrance, California.

**Deborah C. Keesey**
Declarant

## VERIFICATION

I, the undersigned, declare that I am a party to the within action.

I have read the foregoing **SECOND SUPPLEMENT TO EX PARTE APPLICATION FOR AN ORDER FOR SPECIAL LETTERS OF ADMINISTRATION; DECLARATION OF DEBORAH KEESEY; EXHIBIT A – L** and know the contents thereof; the same is true of my own knowledge, except as to matters which are therein stated upon information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _March 11_ , 2019 , at _Torrance_, California.

ALBERT LEE

**Exhibit B**

Deborah C. Keesey, SB #168815
BURKLEY BRANDLIN SWATIK & KEESEY, LLP
21515 Hawthorne Blvd., Suite 820
Torrance, CA 90503-6503
Telephone: (310) 540-6000
Facsimile: (310) 540-5976
E-mail: deb@keeseylaw.com

Attorney for Petitioner
Albert Lee

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| The Estate of<br><br><br><br>SUN MI CHOI,<br><br><br><br><br>                    Decedent. | ) Case No. 19STPB01790<br>)<br>)<br>)<br>)<br>) **DECLARATION OF ALBERT LEE IN**<br>) **SUPPORT OF PETITIONER'S EX PARTE**<br>) **APPLICATION FOR AN ORDER FOR**<br>) **SPECIAL LETTERS OF ADMINISTRATION**<br>)<br>)<br>) Date: March 12, 2019<br>) Time: 8:30 a.m.<br>) Dept: 29<br>)<br>)<br>)<br>)<br>)<br>) |

I, Albert Lee, declare as follows:

1.    I am the Petitioner herein and have requested an order from the court for Special Letters to keep two businesses running pending the hearing on my petition for Letters of Administration.  I have personal knowledge of the facts stated herein, and if called to testify, can and will testify competently thereto.

---

**DECLARATION OF ALBERT LEE**

2.   I am the founder of Chas Group, Inc. ("Chas"), and Amberboa, Inc. ("Amberboa"),, and the former spouse of the decedent, Sun Mi Choi.

3.   I offer this declaration in support of Petitioner Albert Lee's Ex Parte Application for Special Letters of Administration ("Petition").

4.   If called to testify, I would and could testify as follows:

5.   I established Chas, in 2009, and Amberboa, in 2012, and served as the "President" along the decedent Sun Mi Choi, up until approximately 2017.  I was in charge of running and managing the entire business operations at Chas and Amberboa since inception to about March 2017.

6.   I have over 26 years of experience in the fashion and garment business, and started my own wholesale apparel business in 2002.

7.   I was educated at FIDM/Fashion Institute of Design & Merchandising.

8.   I am more than capable of running the businesses in a continuous and profitable manner, and should be appointed as the Special Administrator.

9.   Decedent and I were married in 2004, and were a couple up until about March 2017, but even after that, we continued to take family vacations together, and raised our 3 minor children together.

10.   The Decedent and I had a good relationship up until Brian Park ("Park") inserted himself and broke up our lives in March 2017.  Park was in a broken relationship with his former spouse when he met Decedent.  Park wedged his way into

DECLARATION OF ALBERT LEE

Decedent's personal life first, and then edged his way into Chas and Amberboa, while pushing me out of both.

11.    The Decedent Sun Mi Choi ("Decedent") and I lived together for approximately 13 years, but even after our "paper divorce" in 2014, which was only for the protection and separation of assets due to bankruptcy, Decedent and I continued to have a good relationship living together intermittently, vacationing, and raising our 3 children together.

12.    Although I established and ran both businesses, I put all official business matters in my then-wife's name to protect Chas and Amberboa from a difficult financial time I had with a loan repayment associated with my predecessor business, SH Supply, which I established in 2002.

13.    Because of my financial concerns that I might be facing a bankruptcy proceeding in the future with SH Supply, I wanted to protect Chas, and Amberboa.  Due to the financial troubles of SH Supply, I created Chas and Amberboa purposely using only Decedent's name to protect them from any potential demise of SH Supply.  I mistakenly thought that I had to separate myself from the companies and my wife who was the named owner of the companies by filing for divorce. However, the Decedent and I loved each other and we continued to live together (for much of the time) and carry on as a family with their children until about March 2017.

14.    The Decedent and I built up Chas and Amberboa to be multi-million dollar companies over the years.  By March 2017, Chas and Amberboa were well established in the apparel industry, and were running smoothly.

DECLARATION OF ALBERT LEE

3

15. Park's entry into the businesses did not add any value to the companies.

16. I completely trusted the Decedent, and so had no concern that my businesses were in Decedent's name because we had 3 children together, and I believed that ultimately, everything would go to them and be for their benefit.

17. Decedent loved her children deeply and would not have voluntarily given any part of Chas or Amberboa, to anyone else, including Park.

18. Brian Park entered the picture in about March 2017, and wove himself into the Decedent's life and into the businesses. I believe Brian Park was married at that time to a 3rd party, and may still be married.

19. Based on my understanding, Brian Park is not an owner of the business, and it would be antithetical for Decedent to have intended to voluntarily given up any portion of the ownership to the detriment of her 3 children.

20. One day before Decedent's death, I spoke on the phone with the Decedent, who was happy and calm, and had told me how much she was looking forward to seeing our children after the weekend. Decedent shared that she had met with their oldest son's high school counselor and learned that her son had all A's, and was going to honors and AP classes. She also talked about the very happy conversation she had had with her oldest son about college and taking such advanced classes. Decedent was so glad that she and I had done such a great job raising their children. There was no reservation, anxiousness, stress or depression in Decedent's voice.

21. Just days before Decedent's suspicious death,

---

DECLARATION OF ALBERT LEE



Decedent's nephew stated that Decedent told him that she was planning on firing the managers' park through Esq. to do business, and would not hesitate to remove her this year.

Executed this 6th day of March, 2019, at

_Torrance_ , California.

Albert Lee

DECLARATION OF ALBERT LEE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
707 Wilshire Blvd., 46th Floor, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled (*specify*):
**Complaint to Revoke Discharge Under 11 U.S.C. § 727**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 5, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

M. Teri Lim: terriblklaw@gmail.com
James E. Till: james.till@limnexus.com, john.yoo@limnexus.com
David Keith Gottlieb (TR): dkgtrustee@dkhallc.com
United States Trustee (SV): ustpregion16.wh.ecg@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) November 5, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 5, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Maureen A. Tighe          Via Overnight Delivery
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 324
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 5, 2019 | John J. Yoo | /s/ John J. Yoo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

No. 2 Continuation Page:

San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

ACE USA
Dept CH 14089
Palatine, IL 60055-0001
San Fernando Valley

AFG Enterprises, LLC
c/o Ronald Weiss
15910 Ventura Bkvd Ste 1012
Encino, CA 91436

American Express
PO Box 981535
El Paso, TX 79998-1535

Bank of America
PO Box 15026
Wilmington, DE 19850-5026

Bank of America Home Loans
PO Box 5170
Simi Valley, CA 93062-5170

CHLA Medical Group
File No. 53279
Los Angeles, CA 90074-0001

Calvin Park
Law Office of Calvin Park
2105 Beverly Blvd Ste 127
Los Angeles, CA 90057-2261

Chase Bank
PO Box 260161
Baton Rouge, LA 70826-0161

Children's Hospital
1811 N. Western Ave
Los Angeles, CA 90027-3403

First National Collection
50 N. Liberty Street Ste 250
Reno, NV 89501

Franchise Tax Board
Bankruprcy Section
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

LVNV Funding, LLC
PO Box 10497
Greenville, SC 29603-0497

Monitronics Funding LP
Dept CH 8628
Palatine, IL 60055-0001

Office of Finance - City of LA
PO Box 30879
Los Angeles, CA 90030-0879

Pacific City Bank
3701 Wilshire Blvd, Ste 100
Los Angeles, CA 90010-2832

Sprint
P.O. Box 660075
Dallas, TX 75266-0075

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Verizon Wireless
PO Box 96088
Bellevue, WA 98009-8800

Wells Fargo Business Direct
PO Box 348750
Sacramento, CA 95834-8750

Albert Lee
18729 Hillsboro Rd
Porter Ranch, CA 91326-3908

David Keith Gottlieb (TR)
17000 Ventura Boulevard, Suite 300
Encino, CA CA 91316-4112

M Teri Lim
Law Office Of M. Teri Lim & Associates
3580 Wishire Blvd Ste 900-3
Los Angeles, CA 90010-2523

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
707 Wilshire Blvd., 46th Floor, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled (*specify*):
**Complaint to Revoke Discharge Under 11 U.S.C. § 727**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 3, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

M. Teri Lim: terribklaw@gmail.com
James E. Till: james.till@limnexus.com, john.yoo@limnexus.com
David Keith Gottlieb (TR): dkgtrustee@dkhallc.com
United States Trustee (SV): ustpregion16.wh.ecg@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) December 3, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

- <u>Attorney for Albert Lee</u>
  M. Teri Lim
  Law Offices of M. Teri Lim
  3580 Wilshire Blvd., Ste 900-3
  Los Angeles, CA 90010-2523

- Albert Lee
  18729 Hillsboro Rd.
  Porter Ranch, CA 92136-3908

- David Keith Gottlieb (TR)
  1700 Ventrua Blvd., Suite 300
  Encino, CA 91316-4112

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4823-6747-7161.1

**F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 3, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Maureen A. Tighe                    Via Overnight Delivery
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 324
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 3, 2019 | John J. Yoo | /s/ John J. Yoo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4823-6747-7161.1

**F 9013-3.1.PROOF.SERVICE**

No. 2 Continuation Page:
San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

ACE USA
Dept CH 14089
Palatine, IL 60055-0001
San Fernando Valley

AFG Enterprises, LLC
c/o Ronald Weiss
15910 Ventura Bkvd Ste 1012
Encino, CA 91436

American Express
PO Box 981535
El Paso, TX 79998-1535

Bank of America
PO Box 15026
Wilmington, DE 19850-5026

Bank of America Home Loans
PO Box 5170
Simi Valley, CA 93062-5170

CHLA Medical Group
File No. 53279
Los Angeles, CA 90074-0001

Calvin Park
Law Office of Calvin Park
2105 Beverly Blvd Ste 127
Los Angeles, CA 90057-2261

Chase Bank
PO Box 260161
Baton Rouge, LA 70826-0161

Children's Hospital
1811 N. Western Ave
Los Angeles, CA 90027-3403

First National Collection
50 N. Liberty Street Ste 250
Reno, NV 89501

Franchise Tax Board
Bankruprcy Section
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

LVNV Funding, LLC
PO Box 10497
Greenville, SC 29603-0497

Monitronics Funding LP
Dept CH 8628
Palatine, IL 60055-0001

Office of Finance - City of LA
PO Box 30879
Los Angeles, CA 90030-0879

Pacific City Bank
3701 Wilshire Blvd, Ste 100
Los Angeles, CA 90010-2832

Sprint
P.O. Box 660075
Dallas, TX 75266-0075

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Verizon Wireless
PO Box 96088
Bellevue, WA 98009-8800

Wells Fargo Business Direct
PO Box 348750
Sacramento, CA 95834-8750

Albert Lee
18729 Hillsboro Rd
Porter Ranch, CA 91326-3908

David Keith Gottlieb (TR)
17000 Ventura Boulevard, Suite 300
Encino, CA CA 91316-4112

M Teri Lim
Law Office Of M. Teri Lim & Associates
3580 Wishire Blvd Ste 900-3
Los Angeles, CA 90010-2523